On Motion for Clarification Granted

PER CURIAM.
The opinion of this Court filed on October 30,1996, is vacated and this opinion is substituted in its stead.
Prudence Melissa DiDiego appeals from the denial of her petition to vacate an order approving a settlement between the estate of her deceased father and Snapper Creek Nursing Home. In these consolidated appeals, she seeks reversal of an order finding that her mother is entitled to a spouse’s intestate share of the decedent’s estate and of orders awarding attorney’s fees to the attorney for the personal representative. For the following reasons, we reverse and remand with directions to appoint a successor personal representative.
Ouida Carolyn Ray and the decedent, John Montanez, were married in 1955. Their daughter, Prudence Melissa DiDiego, was born later that year. Ray and Montanez divorced in 1956; remarried each other in 1960; and had a second daughter in 1961. In February, 1961, Ray and Montanez separated for the last time. There is no evidence *945 that a second divorce ever followed that separation.
Montanez was in the merchant marine, and had little contact with his family between 1961 and the time of his death. His wife remarried in 1971, representing in her application for that marriage license that she had been divorced from Montanez on October 29, 1965. She later divorced her second husband.
For the last year of his life, Montanez languished in the Snapper Creek Nursing Home, suffering from severe Alzheimer’s disease. Comprehensive Personal Care Services was appointed guardian of his person and property. Comprehensive is a not-for-profit corporation that grew out of the Guardianship Program of Dade County in order to serve as a guardian of last resort of nonindigent wards. As such a guardian, Comprehensive was entitled to collect fees for its services, which were supposed to ensure the health and welfare of its wards. Comprehensive was neither a trust company, a banking corporation, a savings association, nor a savings and loan association.
No member of his family ever visited Mon-tanez, or even knew that he was in Dade County. He died intestate on May 21, 1994 from septicemia, pneumonia, and deeply infected bedsores. Following Montanez’ death, the probate court appointed Comprehensive Personal Care Services as the personal representative of the estate.
In September 1994, Snapper Creek Nursing Home filed a statement of claim in Mon-tanez’ estate for $20,696.28 for services rendered in the last months of Montanez’ life— primarily to treat his advanced bedsores. Comprehensive objected to the claim; the nursing home filed suit; and the claim was settled for $15,000.00. In the meantime, an heir-locator service had located Montanez’ former wife, Ouida Carolyn Ray, and their two adult daughters, Prudence Melissa Di-Diego and Rhoda Bellaire. Consent forms relating to the settlement between Comprehensive and Snapper Creek were forwarded to the three potential beneficiaries, along with a copy of the proposed settlement agreement. That agreement provided in part:
That contemporaneously with the execution of this Settlement Agreement, Snapper Creek and CPCS on behalf of the Estate of John Montanez, shall execute reciprocal General Releases of one another, except for and excluding the terms and conditions of this Settlement Agreement, and shall immediately file a joint Stipulation Dismissing the above-captioned matter with prejudice, reserving jurisdiction for this Court for the sole purpose of enforcing the terms and conditions of this Settlement Agreement.
Ray and Bellaire consented to the settlement, but DiDiego refused to agree to the settlement and to the exchange of mutual releases. Comprehensive petitioned the probate court for approval of the agreement. At the hearing on Comprehensive’s petition, Ray, Bellaire, and DiDiego attended, along with DiDiego’s attorney. DiDiego contends that she instructed her attorney to object to the settlement at the hearing, but that he failed to do so. The court approved the settlement.
After the hearing, DiDiego fired her attorney and obtained new counsel, who, through a series of motions and petitions sought to make the trial court aware of the potential negligence and wrongful death claims against both Snapper Creek Nursing Home and Comprehensive Personal Care Services that had been compromised by the settlement. DiDiego petitioned the probate court to appoint an administrator ad litem, and to set aside the settlement order. The trial court denied that petition; DiDiego appeals (case no. 95-2275).
During the course of these proceedings, Ray, Montanez’ former wife, petitioned the court for a determination that she was entitled to a surviving spouse’s share of the decedent’s estate. DiDiego opposed that petition, arguing that when her mother married after failing to obtain a divorce from Monta-nez, her mother was in fact repudiating her marriage to Montanez and was estopped from seeking benefits as a surviving spouse. The trial court entered summary judgment for Ray, finding that she was entitled to her *946 share as a surviving spouse. DiDiego appeals from that order (ease no. 95-8160).
Finally, throughout the proceedings, Comprehensive sought attorney’s fees that it had incurred as personal representative. Following an evidentiary hearing, the trial court awarded Comprehensive $48,750.00 in attorney’s fees, encompassing the nursing home settlement litigation and some of the spousal share litigation. DiDiego appeals this order and an earlier interim fee award (case nos. 95-2713, 95-1950).

Comprehensive Was Not Qualified To Serve as Personal Representative

The very appointment of Comprehensive as personal representative was improper, as Comprehensive was not legally qualified to serve as the personal representative of the estate. Section 733.305, Florida Statutes (1993), only allows corporations to serve as personal representatives of an estate when they are trust companies, banking corporations, savings associations, and savings and loan associations. § 733.305(1), Fla. Stat. All other corporations are specifically prohibited from serving as personal representatives of an estate. § 660.41, Fla. Stat. (1993).
Accordingly, we direct the probate court on remand to remove Comprehensive as the personal representative, and to appoint a successor personal representative to represent the estate. See Fla. Prob. R. 5.440; §§ 733.504-506, Fla. Stat. (1995).

The Settlement Agreement Must Re Set Aside

The trial court erred in denying Di-Diego’s petition to set aside the settlement agreement, as the agreement was the product of proceedings that were fatally tainted by conflicts of interest.
The standard of care that applies to a personal representative is set forth in Chapter 733, Florida Statutes; a personal representative is a fiduciary, “under a duty to settle and distribute the estate ... as is consistent with the best interests of the estate.” § 733.602(1), Fla. Stat. Furthermore, a personal representative has the authority to “[p]rosecute or defend claims or proceedings in any jurisdiction for the protection of the estate and of the personal representative in the performance of his duties.” § 733.612(20), Fla. Stat. When settling a claim against an estate, “a personal represen-tativ'e may not release a claim which is in favor of an estate, except in good faith and upon sufficient consideration.” University Medical Ctr. v. Zeiler, 625 So.2d 120, 122 (Fla. 5th DCA 1993).
Comprehensive—which first served as guardian of the person and property of the decedent and was later appointed the Personal Representative—had been entrusted with the care and well-being of the decedent during his last illness, and had a legal duty as guardian pursuant to Chapters 744, Florida Statutes, to monitor its ward’s status. The decedent’s death from septicemia and grossly infected bedsores raises the possibility that viable negligence and malpractice actions may exist by the estate against both Comprehensive and Snapper Creek. See, e.g., Beverly Enters.-Florida, Inc. v. Spilman, 661 So.2d 867 (Fla. 5th DCA 1995) (affirming award to estate’s personal representative of $719,064.02 in compensatory damages and $2,000,000.00 in punitive damages for decedent, a former resident of nursing home who had died of infected bedsores).
In this ease, the settlement between Comprehensive and Snapper Creek foreclosed any possible action by the personal representative against the nursing home; released the estate’s claims for no consideration; paid the nursing home $15,000.00 for the care provided to the decedent in his last months; and precluded any possibility of negligence actions by the estate. In effect, Comprehensive shielded itself and Snapper Creek from liability to the estate while at the same time purporting to serve as personal representative of the estate. This conflict is both obvious and intolerable. Accordingly, we direct that the settlement be set aside.

The Trial Court Must Reverse the Fee Award

In light of our holding relating to Comprehensive’s lack of capacity to serve as personal representative and the role it played in the settlement proceedings, we re *947 verse the orders awarding Comprehensive attorney’s fees. Neither the personal representative nor its attorneys should be compensated in any way for the voidable acts. This is especially so with respect to Comprehensive’s attorneys. They, better than anyone else, knew or should have known that the personal representative’s attempt to settle the creditor’s claim was self-dealing, and created an inherent conflict. It should be remembered that Comprehensive had served as guardian of the decedent’s person and property. Although Comprehensive has likely received its discharge as guardian in the ward’s estate, its actions in caring for, and failing to care for its ward may be challenged by an independent action within three years of the date of its discharge. § 744.531, Fla. Stat. (1995).
Lawyers are officers of the court and they are responsible to the judiciary for the propriety of their professional activities. R. Regulating Fla. Bar, Preamble. When a lawyer knows or reasonably should know that a client expects assistance not permitted by the Rules of Professional Conduct or by the law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer’s conduct. R. Regulating the Fla. Bar 4-1.2(e). The attorneys should have recognized that Comprehensive could not act objectively and neutrally in the settlement of the claim, and with their client’s consent advised the court and procured the appointment of an attorney ad litem to make the investigation and file its report. Alternatively, under the facts herein, if the attorneys were unable to persuade their client of the certitude of their advice, then the attorneys should have moved to withdraw on grounds of irreconcilable differences. Of course, in doing so, counsel would not reveal the client’s secrets or breach their confidential relationship.
This is so even though Comprehensive was acting under then-extant letters of administration. A court-appointed fiduciary should not act where it has a conflict of interest. Neither the personal representative nor the attorneys should be compensated for services which led to the results we conclude are voidable.

The Former Wife is Estopped from Claiming a Widow’s Share

When Ouida Carolyn Ray separated from Montanez in 1961, they lived apart for the rest of his life. When Ouida married Howard Randall Sweet, she represented on the application for the marriage license that she had divorced Montanez. As a matter of law, she is now estopped from assuming the role of Montanez’ widow, and partaking of his estate after repudiating him as her husband. See In re Estate of Butler, 444 So.2d 477 (Fla. 2d DCA) (claimant estopped from seeking widow’s share of estate after she had remarried and thus repudiated marriage to decedent, who had told her that he had obtained divorce), rev. denied, 451 So.2d 847 (Fla.1984); see also In re Estate of Moye, 160 So.2d 525 (Fla. 2d DCA 1964)(where decedent’s wife had entered into bigamous marriage with another man, she was es-topped from claiming interest in decedent’s estate).
Ouida believed that she was divorced from Montanez, and spent the rest of his lifetime acting as though she was no longer his wife. Her actions in marrying Sweet, and then obtaining a divorce from Sweet, demonstrate that she had unequivocally repudiated her status as Montanez’ wife.

Conclusion

We emphasize the voidable acts and orders in this decision either constituted fundamental error or were directly challenged. In sum, we reverse the order denying the petition to vacate the order approving the settlement (case no. 95-2275); reverse the order finding that Ouida Carolyn Ray is entitled to a widow’s share of the estate (case no. 95-3160); vacate the awards of attorney’s fees to Comprehensive (case nos. 95-2713, 95-1950); and remand with directions to remove Comprehensive as personal representative, and appoint a successor personal representative to represent the estate.